

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| VIANNEY ROBLES, | § | |
| | | No. 08-19-00225-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Court at Law No. 3 |
| AMY NICHOLS, KUBINSKI & NICHOLS, | § | |
| P.C., ANDRES E. ALMANZAN, | | of El Paso County, Texas |
| MOUNCE, GREEN, MYERS, SAFI, | § | |
| PAXSON, & GALATZAN, P.C., a/k/a | | (TC# 2019DCV1582) |
| MOUNCE, GREEN, MYERS, SAFI, | | |
| PAXSON, & GALATZAN, a Professional | | |
| Corporation, | | |
| | | |
| Appellees. | | |

**O P I N I O N**

Appellant Vianney Robles appeals the trial court's dismissal of her lawsuit against appellees Amy Nichols and her law firm, Kubinski & Nichols, P.C. (collectively, Nichols), and Andres E. Almanzan and his law firm, Mounce, Green, Myers, Safi, Paxson & Galatzan, P.C. (collectively, Almanzan). Robles' claims arise from certain conduct by Nichols and Almanzan (collectively, Appellees) during their representation of their client, Jorge Ruiz, in his family court proceedings with Robles. The trial court dismissed Robles' claims against Appellees pursuant to the Texas Citizens Participation Act (TCPA). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-

.011.[1] The order of dismissal includes attorney's fees and sanctions assessed against Robles and awarded to both Appellees. We affirm in part and reverse and remand in part.

## I. BACKGROUND

In the course of a contentious divorce, Vianney Robles asserted claims against Jorge Ruiz for various types of wrongdoing to include illegally intercepting and recording several hundred hours of telephone conversations she had with other parties. Both Appellees represented Ruiz in the family court proceedings and in the related tort claims which were asserted against him by Robles.

During the divorce, the parties engaged in extensive discovery to include a request made by Robles for production of any audio recordings made of her that were in Ruiz' possession. Ruiz initially responded that, after a diligent search, no responsive items had been identified. The parties subsequently signed a confidentiality agreement covering "[a]ny and all audio or visual recordings or photographs in the possession of either party which are either requested in discovery requests or intended to be relied upon in court and which are of a sensitive nature[.]" The agreement permitted the parties to use the confidential information for purposes of discovery, litigation, trial, and appeal. Ruiz later supplemented his discovery responses and produced two USB drives containing 756 hours of recorded telephone conversations between Robles and persons other than Ruiz.

After receiving the USB drives, Robles propounded additional discovery requests concerning the manner in which the recordings were made. Because Robles' attorney had

---

[1] The 86th Legislature amended the TCPA in 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684. But the prior version of the statute continues to control cases filed before September 1, 2019. *Id.* at §§ 11–12, 2019 Tex. Gen. Laws at 687. This case was filed on April 29, 2019, before the effective date of the amended statute. Consequently, all references to the TCPA in this opinion are to the version in effect immediately prior to that amendment.

threatened to refer the matter for criminal investigation and prosecution, Ruiz responded to the discovery requests by invoking his rights against compelled self-incrimination under the Fifth Amendment. At a later hearing on the admissibility of the recordings, Ruiz again invoked the Fifth Amendment and refused to answer questions about their origin. Even so, Appellees urged the court to consider the recordings as "relevant to [Robles'] character and activities that are relevant in both the family law case as well as the civil action case[.]" Appellees also informed the court that they had distilled the recordings into a 30-minute excerpt containing the portions they believed were "relevant, material and impeachable[.]" The court directed Appellees to have the excerpt transcribed. Robles filed a written objection and it appears from our record that the transcription was never performed.

In the divorce action, Robles filed a request for sanctions against Ruiz and, later, a request for sanctions against Appellees. She then filed the present lawsuit against Appellees directly wherein she alleged claims under section 123.002 of the Texas Civil Practice and Remedies Code. That statute creates a cause of action by a party to a communication against a person who "uses or divulges information that he knows or reasonably should know was obtained by interception of the communication[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 123.002(a)(2).

Appellees filed motions to dismiss Robles' lawsuit against them pursuant to the TCPA. The trial court granted those motions, dismissed Robles' claims, and awarded attorney's fees in the amount of $12,500 to Nichols and $32,500 to Almanzan. The court also imposed sanctions against Robles in the total amount of $50,000.

## II. DISCUSSION

Robles presents four related issues on appeal. In her first and second issues, Robles asserts that the trial court erred by dismissing her claims, urging that the TCPA does not apply and, even

if it did, she met her burden to establish by clear and specific evidence a prima facie case for each essential element of those claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005. With her third and fourth issues, Robles asserts that the trial court's assessment of attorney's fees and sanctions, respectively, constitute an abuse of discretion.

## A. Standard of Review

The trial court's determinations concerning whether the parties met their respective burdens of proof under the TCPA are reviewed *de novo*. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *see Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). The amount of attorney's fees and sanctions awarded under the TCPA are reviewed for abuse of discretion. *See Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016); *Hawxhurst v. Austin's Boat Tours*, 550 S.W.3d 220, 232 (Tex. App.—Austin 2018, no pet.).

## B. Waiver of the right to seek dismissal

As a preliminary matter, we first address Robles' procedural argument that Appellees waived their right to seek dismissal pursuant to a TCPA motion to dismiss. A TCPA motion to dismiss must be filed within 60 days after service of the legal action. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b). Robles argues here that Appellees waived their right to seek dismissal of her lawsuit because they did not file motions to dismiss within 60 days after she asserted a claim of wiretapping and a request for sanctions against Ruiz, or within 60 days after she sought sanctions arising from the intercepted conversations against Appellees, themselves. The claim against Ruiz and the requests for sanctions against Ruiz and Appellees were all asserted in the divorce proceeding.

Robles' argument is defeated by the plain language of the statute. "A motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of *the legal action*." *Id.* (emphasis added). This language clearly conveys that the trigger for filing a

motion to dismiss is service of the legal action that is the subject of the motion. *See id.* Robles does not contend that Appellees did not file their motions to dismiss within 60 days following the date of service of the present lawsuit, that is, the legal action that is the subject of those motions to dismiss. *See id.* We conclude that her assertion of waiver is overruled.

**C. Issues One and Two: The applicability of the TCPA and the attorney immunity defense**

**1. Overview of the TCPA**

The purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. To effectuate this purpose, the legislature devised a three-step process for determining whether a particular lawsuit should be dismissed or permitted to go forward. Describing the analytical framework of the statute, the Supreme Court stated:

> As a threshold matter, the moving party must show by a preponderance of the evidence that the TCPA properly applies to the legal action against it. If the moving party meets that burden, the nonmoving party must establish by clear and specific evidence a prima facie case for each essential element of its claim. If the nonmoving party satisfies that requirement, the burden finally shifts back to the moving party to prove each essential element of any valid defenses by a preponderance of the evidence.

*Youngkin*, 546 S.W.3d at 679–80 (citations omitted); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005.

Our starting point, then, is determining whether the statute applies to Robles' lawsuit against Appellees. In making this determination, we are reminded that "[t]he surest guide to what lawmakers intended is the enacted language of a statute, which necessarily includes any enacted statements of policy or purpose." *Youngkin*, 546 S.W.3d at 680 (internal quotation marks and citations omitted). Additionally, we construe the words chosen by the legislature "according to

5

their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Id.* (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). But when the legislature expressly defines terms, we must adhere to those definitions. *Id.*

The TCPA provides that a party may file a motion to dismiss a legal action if that action is "based on or is in response to a party's exercise of the . . . right to petition[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). Thus, it is the moving party's initial burden to show, by a preponderance of the evidence,[2] that the legal action is based on, relates to, or is in response to the party's exercise of the right to petition. *Id.* at § 27.005(b)(2). The statute contains an extensive definition of "[e]xercise of the right to petition." *Id.* at § 27.001(4). As pertinent to this case, that definition includes "a communication in or pertaining to . . . a judicial proceeding[.]" *Id.* at § 27.001(4)(A)(i). "Communication" is defined as including "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*. at § 27.001(1).

### 2. Guidance from *Youngkin v. Hines*

The Texas Supreme Court's opinion in *Youngkin* is instructive in guiding our analysis of whether Robles' lawsuit is based on, relates to, or is in response to Appellees' exercise of the right to petition. *Youngkin* involved a determination of whether the TCPA applied to a tort claim brought by a nonclient against an attorney for conduct of the attorney during his representation of his own client. 546 S.W.3d at 678. The asserted basis for liability was that Youngkin, in the course of representing his client in court, read into the record a Rule 11 agreement that was later alleged to be fraudulent. *Id.* at 680. The Supreme Court began its analysis by substituting the statutory

---

[2] "When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

definitions for the defined terms "exercise of the right to petition" and "communication." *Id.* Doing so revealed that "the TCPA applies to a legal action against a party that is based on, related to, or in response to the party's making or submitting of a statement or document in or pertaining to a judicial proceeding." *Id.* The court thus concluded that, by any common understanding of those words, Youngkin made a statement in a judicial proceeding by reading the Rule 11 agreement into the record during trial. *Id.*

The court noted that, viewing these provisions in isolation appeared to answer whether Youngkin met his burden of establishing that the TCPA applied. *Id.* But it went on to reaffirm that statutory interpretation requires more; it requires examining a statute's words and provisions in the context of the statute as a whole. *Id.* at 680-81. The court recognized that the TCPA "is intended to safeguard the constitutional rights of speech, petition, and association (without foreclosing the ability to bring meritorious lawsuits)." *Id.* at 681. But, even so, it found "no conflict between the plain meaning of the definition of the exercise of the right to petition and the statute's express purpose." *Id.* As a result, the court concluded that the TCPA's protections properly applied to the claims asserted against Youngkin arising out of his in-court reading of the Rule 11 agreement. *Id.*

### 3. Applicability of the TCPA in this case

Robles brought suit against Appellees for using or divulging information that they knew or reasonably should have known was obtained by interception of her telephone conversations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 123.002. Specifically, she alleged that one or both Appellees used or divulged intercepted information by (1) creating a 30-minute excerpt from the 756 hours of recordings; (2) permitting the legal staff of their respective law firms to review the recordings and create a catalog of the communications; (3) propounding discovery based on the communications; (4) urging, in court hearings, that the communications were admissible in evidence; and (5) cross-examining Robles about the communications.

7

We begin, as did the Supreme Court in *Youngkin*, by substituting the statutory definitions for the relevant defined terms. *See Youngkin*, 546 S.W.3d at 680. Thus, we find that a lawsuit is subject to dismissal under the TCPA if it is based on, relates to, or is in response to the moving party's making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic in a judicial proceeding. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001(1), 27.001(4)(A)(i), 27.005(b)(2). By any common understanding of these words, the conduct made the basis of Robles' claims constitutes the making or submission of statements in oral, written, and electronic forms in, or pertaining to, a judicial proceeding. In addition, as did the Supreme Court in *Youngkin*, we find no conflict between the plain meaning of these defined terms and the statute's express purpose. *See Youngkin*, 546 S.W.3d at 680.

Robles contends that this case is distinguishable from *Youngkin* because the conduct about which she complains, unlike Youngkin's conduct, is "obviously criminal."[3] She urges that, to show that her lawsuit falls within the TCPA, Appellees were required "to prove by a preponderance of the evidence that their conduct is within the bounds of the law." But this argument suffers from two flaws. First, it "attempts to add a requirement to the statute that does not exist in its text." *Youngkin*, 546 S.W.3d at 681. This attempt must fail because "injecting such a requirement into the TCPA would be disloyal to its enacted text" and contrary to the principles of statutory construction by which our analysis is governed. *Id.*; *see ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (court may not judicially amend statute by adding words not contained in its language).

---

[3] Robles contends that Appellees violated Section 16.02 of the Texas Penal Code, which provides that a person commits an offense if he "intentionally discloses or endeavors to disclose to another person the contents of a wire, oral, or electronic communication if the person knows or has reason to know the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection[.]" TEX. PENAL CODE ANN. § 16.02(b)(2).

8

In addition, Robles' argument conflates the first two steps in the TCPA burden-shifting framework. We are here concerned with step one—whether Robles' lawsuit is based on, relates to, or is in response to a communication in, or pertaining to, a judicial proceeding. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)(2). Whether Appellees' conduct at issue is wrongful is an essential element of Robles' claims against them and, thus, implicates step two—whether Robles established by clear and specific evidence a prima facie case for each essential element of the claim in question. *See id.* at § 27.005(c). Indeed, that is where the policy limitation of protecting the right to petition "to the maximum extent permitted by law" comes into play. *See id.* at § 27.002.

Robles, in essence, attempts to alter the parties' burdens of proof by relieving herself of the burden of establishing the wrongful conduct she alleges and instead imposing on Appellees a burden to disprove such conduct in the first instance. We reject that attempt and, as the TCPA requires, here confine our inquiry to Appellees' initial burden, which is simply to show that the statute applies to Robles' claims against them. *See Youngkin*, 546 S.W.3d at 679–80 (explaining TCPA's sequential burden shifting).

Robles' final argument on this issue is that Appellees' assertion that the TCPA applies is based on their exercise of their client's right to petition, not their own, and they cannot assert Ruiz's right because he abandoned it by invoking the Fifth Amendment. This is similar to the argument made, and rejected by the Supreme Court, in *Youngkin*. *See* 546 S.W.3d at 680–81. The nonmovant in that case argued that the TCPA did not apply because "an attorney speaking for a client in a courtroom is not exercising any personal First Amendment rights at all." *Id.* at 680. But the Supreme Court again adhered to the plain language of the statute and concluded that Youngkin exercised the right to petition by making a statement in a judicial proceeding. *Id.* The statutory language requires the same conclusion in this case.

9

As demonstrated above, applying the plain language of the TCPA to the circumstances of this case shows that Appellees made or submitted statements in oral, written, or electronic forms in, or pertaining to, a judicial proceeding. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001(1), 27.001(4)(A)(i), 27.005(b)(2). This fact is not altered by their client's invocation of his Fifth Amendment rights.

We conclude that Appellees sustained their burden of establishing that Robles' lawsuit is based on, relates to, or is in response to the exercise of the right to petition. *Id.* at § 27.005(b)(2); *see also Youngkin,* 546 S.W.3d at 680–81.

### 4. Applicability of the attorney immunity defense in this case

We need not next determine whether Robles sustained her evidentiary burden under the TCPA because, as discussed below, we ultimately conclude that Appellees successfully established on this record the valid defense of attorney immunity.[4] *See Youngkin*, 546 S.W.3d at 681 (assuming without deciding nonmovant met his burden and resolving case based on attorney immunity defense). Thus, the trial court correctly dismissed Robles' suit regardless of whether she otherwise established a prima facie case for each element of her claim.

"[A]n attorney is immune from liability to nonclients for conduct within the scope of his representation of his clients. Put differently, an attorney may be liable to nonclients only for conduct outside the scope of his representation of his client or for conduct foreign to the duties of a lawyer." *Youngkin*, 546 S.W.3d at 681 (citations omitted); *see Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481-82 (Tex. 2015). The purpose of this defense is to promote attorneys' "loyal, faithful, and aggressive representation" of their clients by removing the fear of personal liability.

---

[4] The trial court did not expressly rule on whether Appellees established a valid defense. But an appellee may assert independent grounds for affirming a court's judgment, especially where, as here, all parties have fully briefed the issue. *See Cardwell v. Whataburger Restaurants LLC*, 484 S.W.3d 426, 428 (Tex. 2016). In fact, Robles raised the attorney immunity defense issue in the first instance in her opening brief.

10

*Youngkin*, 546 S.W.3d at 682; *Cantey Hanger*, 467 S.W.3d at 481.

The actions on which Robles bases her claims against Appellees—i.e., excerpting relevant portions of the recordings, urging their admissibility into evidence, and engaging in discovery related to those recordings—lie squarely within the scope of Appellees' representation of their client, Ruiz. And, while Robles argues that the defense does not apply because Appellees' conduct was allegedly wrongful, the Supreme Court of Texas has specifically rejected that argument: "[T]he above inquiry correctly focuses on the *kind* of conduct at issue rather than the *alleged wrongfulness* of said conduct. That is, a lawyer is no more susceptible to liability for a given action merely because it is alleged to be fraudulent or otherwise wrongful." *Youngkin*, 546 S.W.3d at 681; *see Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 657 (Tex. 2020). Indeed, even Robles' assertion that Appellees' conduct was *criminal* does not remove it from the attorney immunity defense. As the Supreme Court recently stated in *Bethel*:

> Under Bethel's proposed exception, a plaintiff could avoid the attorney-immunity doctrine by merely alleging that an attorney's conduct was "criminal." This would "significantly undercut" the protections of attorney immunity by allowing non-client plaintiffs to sue opposing counsel so long as the plaintiffs alleged that the attorney's actions were criminal in nature. We therefore conclude that criminal conduct is not categorically excepted from the protections of attorney civil immunity when the conduct alleged is connected with representing a client in litigation.

595 S.W.3d at 657 (citation omitted).

Robles points out that the *Youngkin* court recognized that the attorney immunity defense is broad, but not limitless, and that its holding did not mean that "attorneys are insulated from all liability to nonclients for all wrongdoing in the name of a client." *Youngkin*, 546 S.W.3d at 682. But the examples given by the court make clear that the conduct for which attorneys are subject to liability to nonclients still must fall outside the scope of representing the client or must be foreign to the duties of a lawyer. *See id.* at 682-83 (examples include "participation in a fraudulent business

11

scheme with a client, knowingly helping a client with a fraudulent transfer to avoid paying a judgment, theft of goods or services on a client's behalf, and assaulting opposing counsel during trial"). The Supreme Court reiterated this in *Bethel* by stating that "[a]n attorney is not immune from suit for participating in criminal or 'independently fraudulent activities' *that fall outside the scope of the attorney's representation of a client*."[5] 595 S.W.3d at 657 (emphasis added).

Robles attempts to remove her claim from the purview of the attorney immunity defense by arguing that Appellees' conduct was foreign to the duties of a lawyer because it was wrongful or criminal. This is merely a restatement of the argument addressed above. The fact remains that the *kind* of conduct at issue is within the scope of Appellees' representation of their client, so the alleged wrongfulness of that conduct does not deprive Appellees of their defense. *See Bethel*, 595 S.W.3d at 657 (inquiry focuses on kind of conduct at issue not alleged wrongfulness); *Youngkin*, 546 S.W.3d at 681 (same).

Appellees established, by a preponderance of the evidence, the elements of the attorney immunity defense.[6] *Youngkin*, 546 S.W.3d at 681. As a result, the trial court did not err by dismissing Robles' lawsuit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d) (court shall dismiss action if movant establishes valid defense).

Accordingly, Issues One and Two are overruled.

**D. Issue Three: Attorney's fees**

The TCPA requires that the court award reasonable attorney's fees to a successful movant. *Sullivan*, 488 S.W.3d at 299; TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1). "A 'reasonable'

---

[5] The court noted that the attorney immunity defense applies in the context of civil liability to a nonclient and, thus, does not insulate an attorney from criminal liability or other legal remedies such as sanctions, contempt, or disciplinary proceedings. *Bethel*, 595 S.W.3d at 658.

[6] The element of an attorney-client relationship between Appellees and Ruiz is uncontested.

attorney's fee 'is one that is not excessive or extreme, but rather moderate or fair.'" *Sullivan*, 488 S.W.3d at 299 (quoting *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010)). In her third issue on appeal, Robles contends that the trial court abused its discretion by basing its award of attorney's fees on conclusory evidence.

The party seeking an award of attorney's fees bears the burden of proof. *Sullivan*, 488 S.W.3d at 299. "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). The proof must be sufficient to permit a court "to perform a meaningful review of their fee application." *Sullivan*, 488 S.W.3d at 299 (quoting *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 764 (Tex. 2012)). A trial court does not have sufficient information to meaningfully review a fee application in the absence of any evidence of the time spent on specific tasks. *Id.* at 300.

### 1. Almanzan's attorney's fees

Counsel for Almanzan testified that he and another firm lawyer charged $200 to $250 per hour and spent 130 hours on the case. The only testimony concerning what actual tasks were performed, however, was that co-counsel conducted research and "led the briefing and the writing and all of that," and that "[w]e had to learn what was going on in the divorce lawsuit, read all those pleadings. I've read all those pleadings, the transcripts from the other lawsuit, meeting with the clients." Based on this testimony, and over Robles' objection that the testimony was conclusory and lacking the requisite specificity, the trial court awarded attorney's fees to Almanzan in the amount of $32,500.

We agree with Robles that the trial court lacked sufficient information to perform a

13

meaningful review of Almanzan's fee application. *See Sullivan*, 488 S.W.3d at 299. There is no evidence demonstrating the time spent on any specific tasks. *See id.* at 300. Indeed, the testimony fails to even identify any specific tasks, relying instead on general descriptions such as "learn what was going on" and "read all those pleadings."

We conclude that the trial court's award of $32,500 in attorney's fees to Almanzan lacks a sufficient evidentiary basis and, thus, constitutes an abuse of discretion. Almanzan is, however, statutorily entitled to recover reasonable attorney's fees as a successful movant under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1). Consequently, we remand the cause to the trial court for further proceedings on the issue of Almanzan's attorney's fees. *See Sullivan*, 488 S.W.3d at 300.

### 2. Nichols' attorney's fees

Nichols concedes that the evidence in support of her attorney's fee award is insufficient under the Supreme Court's analysis in *Rohrmoos Venture*. *See* 578 S.W.3d at 498. But, she, too, is entitled to an award of reasonable attorney's fees as a successful movant under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1). We therefore remand the cause to the trial court for further proceedings on the issue of Nichols' attorney's fees. *See Sullivan*, 488 S.W.3d at 300.

Accordingly, Issue Three is sustained.

## E. Sanctions

The imposition of sanctions is mandatory under the version of the TCPA that applies to this case. TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(2). The amount of sanctions is the amount "the court determines sufficient to deter the party who brought the legal action from bringing similar actions." *Id.* The amount of sanctions is thus within the trial court's discretion,

14

and is subject to review "to determine whether the trial court assessed that amount arbitrarily or without reference to guiding principles such that the award is greater than necessary to serve that purpose." *Landry's, Inc. v. Animal Legal Def. Fund*, 566 S.W.3d 41, 70 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

Robles contends that the amount of sanctions is not supported by any evidence. But she cites no authority, and we have found none, requiring that the court have before it evidence that expressly relates to the amount of sanctions.

Robles further contends that the trial court abused its discretion by basing the amount of sanctions assessed against her on "symmetry" with the amount of attorney's fees awarded. The record does not show, however, that the amount of sanctions was based on any such "symmetry."[7] Nevertheless, attorney's fees incurred by the party seeking sanctions are an appropriate factor to be considered in determining the appropriate amount of such sanctions. *See Low v. Henry*, 221 S.W.3d 609, 620 n.5 (Tex. 2007) (recognizing "a nonexclusive list of factors," including "the reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct," to help determine the amount of sanctions); *Landry's*, 566 S.W.3d at 71.

It appears in this case that the trial court considered the amount of attorney's fees awarded as a factor in determining an appropriate amount of sanctions. Because we remand the issue of attorney's fees to the trial court for reassessment, we likewise remand the issue of the appropriate amount of sanctions to be imposed.

Accordingly, Issue Four is sustained.

---

[7] The court awarded Almanzan $32,500 in attorney's fees, but only $25,000 in sanctions. The court also awarded Nichols $25,000 in sanctions, but only $12,500 in attorney's fees. Even combining the awards, which results in an award of $45,000 in attorney's fees and $50,000 in sanctions, does not demonstrate the supposed symmetry about which Robles complains.

### III. CONCLUSION

The trial court did not err by dismissing Robles' lawsuit against Appellees pursuant to the TCPA. It did, however, abuse its discretion by assessing attorney's fees and sanctions without a sufficient evidentiary basis to support those assessments. Therefore, the portions of the order of dismissal awarding attorney's fees to Appellees are reversed. The portions of the order of dismissal imposing sanctions, being intertwined with the award of attorney's fees, are also reversed. This cause is remanded to the trial court for further proceedings to determine the amount of attorney's fees and sanctions to be awarded. The order of dismissal is otherwise affirmed.


GINA M. PALAFOX, Justice

August 19, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.
Rodriguez, J., dissenting

16